BRIGHT, Circuit Judge,
dissenting.
I dissent. It is a basic rule of law in the federal courts that a plea of guilty must be knowing, intelligent, and voluntarily made. All parties, including the prosecutor, defense counsel, and judge, should strive to ensure that defendants understand the terms and consequences of guilty pleas. The issue in this case is not whether promises were made to Norvell. The issue is whether Norvell realized that despite acceptance into the Teen Challenge program, the arrangement might or might not be approved by the court. I conclude that the fact that the court might reject Teen Challenge was never fully explained to Norvell. Thus the plea of guilty was not knowingly and intelligently made and it should be set aside.
The most relevant evidence on this issue is contained in the record of the change of plea hearing and is reproduced below:
The Court: But has anybody, and when I say “anybody,” I mean anybody, including your own counsel or the prosecution or any of the agents or anyone done anything to force you to come here to plead guilty today?
Norvell: Nobody forced me to, no, sir. The Court: So you are here on your own?
Norvell: I am, sir.
The Court: Okay. On the other side of that, has anyone made promises to you about what’s going to happen other than the promises in the plea agreement? Norvell: Just that I was going to get an opportunity to go to Teen Challenge before my sentencing?
The Court: I don’t know. [Government counsel], do you want to address that? I’m not sure what it is.
Government counsel: Your Honor, I know the defendant has enrolled or attempted to enroll in Minnesota Teen Challenge. And from that perspective, it’s not part of the government’s offer or the agreement itself, although I have made clear to [defense counsel] and to *797 the defendant that I’m not going to object if there becomes—if he presents a motion saying I’ve made it into Teen Challenge, and he’s accepted into the program. It follows the course of conduct in this related investigation when it comes to people who are trying to better themselves before sentencing.
The Court: Okay. And my recollection, I’ve had a couple of folks who have done that. Oftentimes, it’s kind of a diversion program, is it not?
Government counsel: I don’t know... .from what I understand, it is, the goal is to try to interdict drug problems and difficulty.
The Court: Yes, and it’s like another treatment program. Is that how you see it, Mr. Norvell?
Norvell: Yes, sir.
The Court: But if I remember correctly, and I want to just make sure you understand and we all understand what’s happening, but that’s not part of your sentence itself. And it may be included as part of what you do as a program, but you still got to get sentenced by the Court as to what happens here. Correct?
Norvell: Yes, sir.
The Court: Okay. And that’s what you understand?
Norvell: Yes, sir.
Plea Hr’g Tr. 32-B4.[4]
Norvell may well have understood that he would get an opportunity to attend Teen Challenge before his sentencing. Despite efforts by the district court and government counsel to clarify how Teen Challenge related to the plea agreement, the colloquy did nothing to disabuse Nor-vell of the notion that Teen Challenge was part and parcel of his guilty plea. The prosecutor explained that Teen Challenge was “not a part of the government’s offer or the agreement itself,” but went on to state that the government would not object to a motion to attend Teen Challenge. The district court judge also attempted to ensure that Norvell understood the status of Teen Challenge, by telling him it was “not a part of [the] sentence itself.” But the judge went on to state that Teen Challenge “may be included as a part of what you do as a program.”
The rule that pleas must be knowing, intelligent, and voluntary means nothing if the contents of plea agreements are not explained in a way defendants can understand. The judge and the prosecutor may have understood that Norvell might not be allowed to attend Teen Challenge. A lawyer who reads the record might understand that fact from language like “it’s not a part of the government’s offer or the agreement itself,” and “you still [have] to get sentenced by the court.” But neither Norvell nor any similarly situated defendant would have such an understanding. No one told him, in clear terms, ‘You may or may not be able to attend Teen Challenge. It is not guaranteed.” I emphasize that the prosecutor told Norvell the government would not object to his participation in Teen Challenge and the court told him Teen Challenge may be included as part of a program.
If someone had informed Norvell at the change of plea hearing, in clear terms, that his ability to participate in Teen Challenge was questionable, his sentencing options *798 would have looked much different. He may well have not agreed to plead guilty. Indeed, had it been disclosed that the court could deny Norvell the opportunity to attend Teen Challenge, the record would look much different.
Guilty pleas play a very important role in our criminal justice system. Unfortunately, the process by which district courts approve guilty pleas is often rote. Plea bargains are sometimes fair, and maybe sometimes not so fair. Nonetheless, all the participants—lawyers as well as judges—must bear in mind that the purpose of a hearing on a guilty plea is to ensure the defendant knows what he is agreeing to. The Rule 11 colloquy is not merely a series of questions to be answered in the affirmative. It is designed to ensure knowing, intelligent, and voluntary pleas. Extreme care must be taken to make sure that defendants have no misunderstandings about the effect of a guilty plea. This plea record shows a gap in the explanation of the sentence as it related to Teen Challenge. In my view the plea of guilty should be set aside and the case remanded for further proceedings.

. The reader will observe that the majority opinion, at pages 7 and 8, dilutes the importance of the above colloquy among the defendant, the prosecutor, and the judge, by referring to testimony given by both sides at the later motion hearing. But at its conclusion, on page 8, the majority concedes "the plea record may show a gap.” Indeed, it's quite a gap-